# NONDISCLOSURE, INVENTIONS AND NONCOMPETITION AGREEMENT

In consideration of my employment with Avertium, LLC or Avertium Tennessee, Inc. and/or any of their respective affiliates, subsidiaries and parent companies (together, the "**Company**"), my receipt of equity awards and/or compensation from the Company, and for other good and valuable consideration, the receipt and sufficiency of which are acknowledged, I agree with the Company as set forth below.

1. **Confidential Information**.

   **(a)** I shall not at any time, directly or indirectly, disclose or divulge any Confidential Information (as defined below), except (i) as reasonably required in connection with the performance of my job duties for the Company in furtherance of the Company's interests, and (ii) to the extent required by law (but only after I have provided the Company with reasonable written notice and opportunity to take action against any legally required disclosure).

   **(b)** I shall make no use whatsoever, directly or indirectly, of any Confidential Information at any time, except as reasonably required in connection with the performance of my job duties for the Company in furtherance of the Company's interests.

   **(c)** I shall not remove any Confidential Information from the Company's premises or make copies of any Confidential Information, except to the extent reasonably required to perform my job duties in furtherance of the Company's interests. I shall take reasonable steps to protect all Confidential Information in my possession or control.

   **(d)** Upon the termination of my employment or upon the Company's written request at any time, I shall immediately deliver to the Company all materials (including all copies in any form or medium) in my possession or control that contain or relate to Confidential Information and all other Company property in my possession or control. If requested by the Company, I shall confirm in writing that I have complied fully with the provisions of this Agreement.

   **(e)** Nothing in this Section precludes me from providing information to any governmental entity, or to an attorney, for the sole purpose of reporting or investigating a suspected violation of law. I also have the right to disclose Confidential Information in a document filed in a lawsuit or other proceeding, but only if the filing is made under seal and protected from public disclosure. Nothing in this Agreement is intended to conflict with 18 U.S.C. § 1833(b) or create liability for disclosures of trade secrets that are expressly allowed by 18 U.S.C. § 1833(b).

   **(f)** As used herein, "**Confidential Information**" means all trade secrets and all other non-public information of any kind relating to the Company or its business, including (i) all Business Partners (as defined below) and prospective Business Partners, financial information, proprietary information, know-how, pricing policies, operational methods, methods of doing business, technical processes, formulae, designs, inventions, computer hardware, software programs, business plans and projects pertaining to the Company and (ii) all

information of others that the Company has agreed or is legally required to keep confidential, in each case under clauses (i) and (ii), whether oral, written or electronic or any other medium.

  2.  **Assignment of Developments**.

  **(a)** All inventions, modifications, discoveries, designs, developments, improvements, processes, software programs, works of authorship, documentation, formulae, data, techniques, know-how, secrets or intellectual property rights or any interest therein made by me, either alone or in conjunction with others, at any time or at any place during my employment with the Company, including all such periods prior to the date hereof, whether or not reduced to writing or practice during such period of employment, that (i) relate to the business in which Company is engaged or planning to engage during my employment with the Company, (ii) are created or improved in whole or in part by using any Company resources (including Confidential Information and intellectual property rights), facilities or equipment, or (iii) are created or improved within the scope of my employment with the Company (collectively, the "**Developments**"), shall be and hereby are the exclusive property of the Company without any further compensation to me. In particular, all copyrightable work by me eligible to be "work made for hire" as defined in Section 101 of the Copyright Act of 1976, as amended, shall be the property of the Company pursuant to such Act.

  **(b)** I shall promptly disclose in writing all Developments to the Company. If any Development is not the property of the Company by operation of law, this Agreement or otherwise, I will, and hereby do, assign to the Company all right, title and interest in such Developments without further consideration, and shall assist the Company and its nominees in every way, at the Company's expense, to secure, maintain and defend the Company's rights in such Developments. I shall sign all instruments necessary for the filing and prosecution of any applications for, or extension or renewals of, letters patent (or other intellectual property registrations or filings) of the United States or any foreign country which the Company desires to file and relates to any Development. I irrevocably designate and appoint the Company and its duly authorized officers and agents as my agent and attorney-in-fact (which designation and appointment shall be deemed coupled with an interest and shall survive my death or incapacity), to act for and on my behalf to execute and file any applications, extensions or renewals and to do all other lawfully permitted acts in connection with the prosecution and issuance of letters patent and other intellectual property registrations or filings or such other similar documents with respect to the Developments with the same legal force and effect as if executed by me. To the extent I retain any moral rights under applicable law, I shall not assert such moral rights in any manner inconsistent with this Agreement.

  **(c)** I represent and warrant that the intellectual property, inventions and developments, if any, identified on Exhibit A attached hereto comprise all of the intellectual property, inventions and developments that I have made or conceived prior to my employment by the Company or in which I have an interest (collectively, "**Prior Inventions**"). If Exhibit A is left blank, I represent, warrant and agree that I have no Prior Inventions to disclose. If I use or incorporate any Prior Invention into any Company property, process, product or service, the Company is hereby granted and shall have a non-exclusive, fully paid up, royalty-free, irrevocable, perpetual, transferable, sub-licensable, worldwide license to make, have made, modify, enhance, distribute, sell, use and/or otherwise exploit such Prior Inventions.

3.     **Noncompetition.**  While I am employed by the Company and for one year after[1] my employment terminates for any reason, I shall not, directly or indirectly, individually or as a stockholder, partner, member, lender, investor, manager, director, officer, employee, consultant, representative, advisor or other owner or participant in any entity, other than the Company, engage in or assist any other person or entity to engage in any business which competes with any business in which the Company is engaging or in which the Company plans to engage, during or at the time of termination of my employment, in the United States or anywhere else in the world where the Company does business.

4.     **Nonsolicitation of Business Partners.**  While I am employed by the Company and for one year after my employment terminates for any reason, I shall not, directly or indirectly, solicit, divert or take away, or attempt to solicit, divert or take away, or otherwise interfere with, the business or relationship of the Company with any of its customers, prospective customers, distributors, dealers, referral sources, business partners, suppliers, vendors, service providers, consultants, lenders, investors, landlords, licensors or agents or any other person or entity with whom the Company does business (collectively, "**Business Partners**").  I also shall not, directly or indirectly, assist any person or entity in performing any activity prohibited by this Section.

5.     **Nonsolicitation of Employees.**  While I am employed by the Company and for one year after my employment terminates for any reason, I shall not, directly or indirectly, solicit, recruit, hire or engage, or otherwise interfere with the business relationship of the Company with any current or former employee of the Company, other than any person who ceased to be employed by the Company for a period of at least 12 continuous months.  I also shall not, directly or indirectly, assist any person or entity in performing any activity prohibited by this Section.

6.     **Remedies**.  Without limiting the remedies available to the Company, I agree that a breach of any of the terms of this Agreement would result in irreparable injury to the Company for which there may be no adequate remedy at law, and that, in the event of such a breach or threat thereof, the Company shall be entitled to obtain a temporary restraining order and/or a preliminary injunction and a permanent injunction restraining me from engaging in any activities prohibited by this Agreement or such other equitable relief as may be required to specifically enforce any of the terms of this Agreement, without the necessity of posting a bond or other security.  Such relief shall be in addition to, and not as an alternative to, any other remedies available to the Company at law or in equity.  In the event of any action concerning any breach or threatened breach of this Agreement, the non-prevailing party shall be obligated to pay all reasonable attorneys' fees, costs and other expenses incurred by the prevailing party in connection with and preparation for such action.  If I violate any restrictive covenant in this Agreement, the temporal period applicable to such covenant shall be extended by the period of time during which such violation occurred.  In the event that I breach any of the terms in this Agreement, in addition to any other remedies available to the Company, the Company shall be entitled to require me to account for and pay over to the Company all compensation, profits,

monies, accruals and other benefits derived or received by me, or any entity on behalf of which I was engaging in the activities constituting such breach, as the result of such breach.

       7.    **Acknowledgements**. I understand, accept and agree to the objectives and goals of this Agreement and acknowledge the important and valuable interests of the Company to be protected by this Agreement. I agree and acknowledge that (a) the duration, geographical scope and subject matter of the restrictions in this Agreement are reasonable and necessary to protect the goodwill, customer relationships, legitimate business interests and Confidential Information of the Company, (b) I shall be able to earn a satisfactory livelihood without violating this Agreement, (c) this Agreement is assignable by the Company and shall inure to the benefit of its successors and assigns and (d) no change in my compensation, employment duties or other terms and conditions of employment after the date of this Agreement shall alter or change my obligations under this Agreement. This Agreement is in addition to, and not a replacement for, any similar restrictions contained in any other agreement with the Company to which I am a party. In the event of any conflict between the provisions of this Agreement and such other restrictions, the provisions most favorable to the Company shall control. The restrictions in this Agreement explicitly cover all active and passive forms of oral, written and electronic communications (including through social media).

       8.    **No Conflicting Obligations**. I am not party to any agreement, commitment or obligation that could conflict with my obligations under this Agreement, be violated by my employment with the Company or limit my ability to perform my duties for the Company. I shall not use or misappropriate any intellectual property, trade secrets or confidential information belonging to former employers or others in connection with the performance of any services on behalf of the Company.

       9.    **No Employment Rights**. I agree that my employment with the Company is at-will, meaning that either I or the Company may terminate the employment relationship at any time and for any reason, with or without cause or notice.

       10.    **Survival**. The provisions of this Agreement shall survive the termination of my employment for any reason.

       11.    **Publicity**. I consent to all uses and displays by the Company of my name, voice, likeness, image, appearance and biographical information in connection with any advertising or other legitimate business purpose of the Company for no additional compensation.

       12.    **Choice of Law; Forum**. This Agreement, and any dispute arising under or relating to this Agreement, shall in all respects be governed by and construed in accordance with the internal substantive and procedural laws of the State of Tennessee, without regard to any conflicts of laws principles. The parties irrevocably and unconditionally (a) submit to the exclusive jurisdiction of the state and federal courts located within the State of Tennessee (the "**Courts**") for the purpose of any suit, action or other proceeding arising under or relating to this Agreement, (b) agree not to commence any suit, action or other proceeding arising under or relating to this Agreement except in the Courts, and (c) waive, and agree not to assert, by way of motion, as a defense, counterclaim or otherwise, in any such suit, action or proceeding, any claim that such party is not subject personally to the jurisdiction of the Courts, that its property is

exempt or immune from attachment or execution, that the suit, action or proceeding is brought in an inconvenient forum, that the venue of the suit, action or proceeding is improper or that this Agreement or the subject matter hereof may not be enforced in or by the Courts.  Each of the parties irrevocably and unconditionally consents to service of process in the manner provided for notices in Section 21.  Nothing in this Agreement will affect the right of any party to this Agreement to serve process in any other manner permitted by law.

  **13.**  **Waiver of Jury Trial**.  EACH PARTY AGREES THAT ANY CONTROVERSY WHICH MAY ARISE UNDER OR OTHERWISE RELATE TO THIS AGREEMENT IS LIKELY TO INVOLVE COMPLICATED AND DIFFICULT ISSUES, AND EACH PARTY IRREVOCABLY AND UNCONDITIONALLY WAIVES ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY LITIGATION DIRECTLY OR INDIRECTLY ARISING OUT OF OR RELATING TO THIS AGREEMENT.

  **14.**  **Successors and Assigns**.  This Agreement shall be binding on and inure to the benefit of the parties hereto and their respective heirs, executors and administrators, successors and assigns, except that my rights and obligations hereunder are personal and may not be assigned without the Company's prior written consent.

  **15.**  **Severability**.  This Agreement shall be interpreted so as to be effective and valid under applicable law, but if any provision is prohibited or invalid under such law, such provision shall be ineffective only to the extent it is prohibited or invalid, without invalidating or nullifying the remainder of such provision or any other provision of this Agreement.  If any one or more of the provisions contained in this Agreement shall for any reason be held to be excessively broad as to duration, geographical scope, activity, subject or otherwise, such provisions shall be construed by limiting and reducing it so as to be enforceable to the maximum extent permitted by applicable law.

  **16.**  **Amendments**.  The provisions of this Agreement shall not be modified, amended or waived at any time except by a writing signed by the parties.

  **17.**  **Entire Agreement**.  This Agreement embodies the entire agreement and understanding among the parties with respect to the subject matter hereof and the matters covered hereby and supersedes all prior discussions, understandings and agreements concerning such matters, except as otherwise set forth in Section **7**.

  **18.**  **No Waivers; Nonexclusive Remedies**.  No failure or delay in exercising any right, power or remedy shall operate as a waiver thereof; nor shall any single or partial exercise of any right, power or remedy preclude any other or further exercise thereof or the exercise of any other right, power or remedy.  The rights and remedies under this Agreement are in addition to and not in substitution for any other rights and remedies available at law or in equity or otherwise.

  **19.**  **Notice of New Business Activity**.  In the event that I am no longer an employee of the Company, I consent to notification by the Company to my new employer or its agents regarding my rights and obligations under this Agreement. During the one year following termination of my employment, I shall give written notice to the Company of each new business

activity I plan to undertake, at least 10 business days prior to beginning any such activity. Such notice shall state the name and address of the person, corporation, association or other entity or organization (each, an "**Entity**") for whom such activity is undertaken and the nature of my business relationship or position with the Entity. I shall also provide the Company with other pertinent information concerning such business activity as the Company may reasonably request in order to determine my continued compliance with my obligations under this Agreement.

20. **Counterparts**. This Agreement may be executed in two or more counterparts, and with counterpart signature pages, each of which shall be an original, but all of which together shall constitute one and the same Agreement, binding on all of the parties hereto notwithstanding that all such parties have not signed the same counterpart. Counterpart signature pages to this Agreement transmitted by electronic mail in "portable document format" ("**.pdf**") form, or by any other electronic means intended to preserve the original graphic and pictorial appearance of a document, will have the same effect as physical delivery of the paper document bearing an original signature.

21. **Notices**. Any notice, demand or communication hereunder shall be given in writing and (a) if sent to the Company, shall be delivered to c/o Avertium, LLC, 20601 North 19th Avenue, Suite 150, Phoenix, AZ 85027, attention: Chief Financial Officer and (b) if delivered to me, shall be sent to my most recent home or other address as listed in the Company's records.

22. **Construction of Agreement**.

    **(a)** **Headings**. The headings of articles and sections herein are inserted for convenience of reference only and shall be ignored in the construction or interpretation hereof.

    **(b)** **References to this Agreement**. The words "hereof," "herein," "hereto", "hereunder", "hereby" and other similar expressions refer to this Agreement as a whole and not to any particular section or portion of it.

    **(c)** **Including**. Where the word "including" or the word "includes" is used in this Agreement, it means "including (or includes) without limitation".

SIGNATURE PAGE FOLLOWS

The parties have executed this Agreement as of the date set forth below.

Dated: _____          _____
                                        Name:

Agreed to and Accepted:

Avertium, LLC

By: _____
    Name:
    Title:

# Exhibit A

# Prior Inventions

| Title | Date | Identifying Number or Brief Description |
|---|---|---|
|  |  |  |
|  |  |  |