# AVERTIUM HOLDINGS, LLC

## Option Agreement

This Option Agreement (the "**Agreement**") is entered into as of October 3, 2019 by and between Avertium Holdings, LLC, a Delaware limited liability company (the "**Company**"), and **Steven Marandola** (the "**Optionee**").

## Introduction

The Company is the ultimate parent of Avertium, LLC. The Company has adopted its 2018 Equity Incentive Plan (as in effect from time to time, the "**Plan**"), pursuant to which the Board (as defined in the Plan) has authorized the grant of options to acquire Common Units of the Company (the "**Common Units**"). Capitalized terms used herein and not defined shall have the meanings given to them in the Plan.

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Company and the Optionee agree as follows:

**1.    Grant of Option.**  The Company hereby grants to the Optionee an option (collectively, the "**Option**") to purchase an aggregate of up to 267,137 Common Units, subject to the terms and conditions of this Agreement and the Plan. The exercise price for each Common Unit is $1.50, which is not less than the Fair Market Value of a Common Unit as of the date of this Agreement. The Common Units subject to the Option are divided into two distinct "groups", with each group having its own vesting provisions, but are otherwise identical. The "**Time-Vesting Option**" consists of 178,091 Common Units and the "**Performance-Vesting Option**" consists of 89,046 Common Units.

**2.    Vesting.**

(a)    **Time Based Vesting**. Subject to the other provisions of this Agreement, twenty-five percent (25%) of the Time-Vesting Option shall vest on the first anniversary of the date of this Agreement and the balance of the Time-Vesting Option shall vest in equal monthly increments over the subsequent thirty-six (36) months, in each case so long as the Optionee has a Business Relationship with a Related Company through the applicable date. Notwithstanding anything to the contrary contained in this Agreement, immediately prior to a Liquidity Event and unless otherwise determined by the Board in its sole discretion, any portion of the Time-Vesting Option which is not then vested shall be deemed to have been forfeited to the Company without the need for further action by the Company or the Optionee.

(b)    **Performance Based Vesting.**

(i)    Subject to the other provisions of this Section 2, the Performance-Vesting Option shall vest if (A) the Optionee has a Business Relationship with a Related Company through and at the time of a Liquidity Event and (B) the Investor Multiple of Investment is at least three (3) times.

**(ii)** The determination of whether the Performance-Vesting Option vests or does not vest shall be made in good faith by the Board, which determination shall be final and binding upon all parties.

**(iii)** Notwithstanding anything to the contrary contained in this Section 2(b), the portion of the Performance-Vesting Option that would otherwise vest under this Section 2(b) shall not vest to the extent such vesting or the exercise of the applicable portion of the Performance-Vesting Option would result in the Investor receiving less than Investor Multiple of Investment necessary to permit the vesting of Performance-Vesting Option hereunder (i.e., no portion of Performance-Vesting Option shall vest under any subsection unless, after giving effect to the vesting and the exercise of the applicable portion of the Performance-Vesting Option of (A) such portion of Performance-Vesting Option and (B) all other limited liability company units of the Company and any options exercisable therefor that would vest under similar conditions (whether or not under this Agreement and whether or not held by the Optionee), the Investor would still receive an Investor Multiple of Investment to permit the full or partial vesting of any Performance-Vesting Option under such subsection).

**(iv)** If a Public Offering occurs that is not a Liquidity Event, then at the discretion of the Board (A) the Board may determine the Investor Multiple of Investment in good faith as of immediately prior to the Public Offering based on the implied value of the Investor's securities at the time of the Public Offering, and such determination shall be final and binding, (B) the Board may convert the Performance-Vesting Option to a Time-Vesting Option that will have the same vesting schedule as the Time-Vesting Option but a vesting commencement date of the closing of the Public Offering (i.e., a new four year vesting schedule commencing as of the Public Offering), or (C) the Performance-Vesting Option will remain outstanding but will only vest upon the date the Investor actually realizes an Investor Multiple of Investment of at least three times (3x) and the Optionee continues a Business Relationship with a Related Company through such date.

**(c)** **Termination of Employment**. Notwithstanding any other provision in this Agreement to the contrary:

**(i)** The vesting of the Option is contingent upon the Optionee maintaining a Business Relationship with the Related Companies through the applicable vesting date. No portion of the Option will vest after the termination of the Optionee's Business Relationship for any reason. The portion of the Option that has not vested as of such termination shall automatically terminate as of the date of such termination.

**(ii)** If, prior to a Liquidity Event, the Optionee's Business Relationship is terminated by a Related Company for Cause, no portion of the Option will be considered vested (including any portion that had previously vested under any other provision of this Agreement) and the Option shall automatically terminate as of the date of such termination of the Optionee's Business Relationship. For this purpose, the Optionee shall be deemed to have been terminated for Cause if Cause exists (or would

exist with notice or the passage of time) at the time of termination of the Optionee's Business Relationship.

(iii) If, prior to a Liquidity Event, the Optionee's Business Relationship is terminated (A) by a Related Company without Cause, (B) by the Optionee for any reason or (C) as a result of the death or Disability of the Optionee, then the portion of the Option that had vested as of the termination date shall remain vested.

(d) **Definitions**. As used herein,

(i) "**Business Relationship**" means the uninterrupted provision of service to a Related Company as a full-time employee.

(ii) "**Investor**" means Sunstone MSSP Aggregator, LLC and any of its Affiliates.

(iii) "**Investor Cash Inflows**" means, as of any date of determination and without duplication of amounts, the aggregate cash payments received by the Investor on or prior to such date with respect to any debt or equity securities of the Company or its subsidiaries purchased by Investor (whether such payments are received as distributions, interest, proceeds with respect to the sale or redemption of such securities, upon a dissolution of Company, or otherwise). If Investor receives non-cash consideration in a Liquidity Event, then the Board shall determine in good faith the value of such non-cash consideration and the Investor Cash Flows based thereon, which determinations shall be final and binding on the parties. If any consideration is subject to an escrow or holdback, such consideration shall only be included in the determination of Investor Cash Inflows after being released from such escrow or hold back to the Investor without restriction. For greater certainty, Investor Cash Inflows shall exclude (and be calculated net of) (A) fees paid to Sunstone Partners Management, L.L.C. under any management agreement, (B) expense reimbursements, (C) indemnification payments, (D) tax distributions, and (E) any such proceeds to the extent required to pay or repay any indebtedness, expenses or other liabilities incurred by or on behalf of Investor in connection with any transaction giving rise to any such payment.

(iv) "**Investor Cash Outflows**" means the sum of all cash payments made by the Investor to acquire debt and/or equity securities of the Related Companies.

(v) "**Investor Multiple of Investment**" means, as of the date of determination, the Investor Cash Inflows divided by the Investor Cash Outflows. The calculation of Investor Multiple of Investment and Investor Cash Inflows is, by its nature, an iterative calculation and will be calculated after giving effect to the vesting of any Common Units and any other similar arrangements or agreements.

3. **Exercise of Option**.

(a) **General**. This Option is only exercisable for Common Units that have vested under the provisions of this Agreement.

**(b) Timing of Exercise of Option**.

**(i)** Subject to Section 3(b)(ii) below, the vested portion of this Option may be exercised at any time on or before the date that is 90 days after the date of termination of the Optionee's Business Relationship with all Related Companies; provided, however, that if such Business Relationship terminates on account of the Optionee's death or Disability, this Option must be exercised within one year after the termination of such Business Relationship.

**(ii)** Under no circumstance may this Option be exercised more than ten (10) years after the date of this Agreement.

**(iii)** This Option shall become null and void if not exercised within the time periods required by this Section.

**(c) Exercise Procedure**. Subject to the conditions set forth herein and in the Plan, the Option may be exercised by the Optionee's delivery of written notice to the Company specifying the number of Common Units to be purchased and the purchase price therefor, accompanied by payment in full.

**(d) Payment of Purchase Price**. The price for Common Units purchased hereunder shall be paid by delivery to the Company of (i) cash or a check to the order of the Company, or (ii) any other lawful consideration approved by the Board that is permitted under the Plan.

**(e) Issuance of Common Units**. The Company shall, upon receipt of payment in full for Common Units properly purchased hereunder, promptly issue the Common Units. Notwithstanding the foregoing, if the Company is required by law or by any securities exchange on which the Common Units are listed to take any action before the issuance of such Common Units, the date of issuance shall be extended to allow such action to be completed. The Company's obligation to issue such Common Units is also subject to the satisfaction of all applicable tax withholding requirements, which shall be satisfied by the remittance by the Optionee to the Company of the required taxes prior to the issuance of the Common Units or in such other manner as is acceptable to the Company. The Common Units will be uncertificated interests, unless otherwise determined by the Board.

**4. LLC Agreement**. If the Optionee or other holder of this Option is not already a party to the LLC Agreement, the Optionee's right to exercise this Option and the Company's obligation to issue Common Units upon exercise of this Option are subject to the execution by the Optionee (or other holder of this Option) of a supplemental signature page or instrument of accession to the LLC Agreement in a form required by the Company pursuant to which the Optionee (or other holder of this Option) becomes a party to and bound by the LLC Agreement as a Member (as such term is defined in the LLC Agreement).

**5. Noncompetition and Confidentiality Agreement**. As a condition precedent to the grant of the Option, Optionee has entered into a Nondisclosure, Inventions and Noncompetition Agreement (the "**Confidentiality Agreement**") with the Company or one of its subsidiaries. The execution of the Confidentiality Agreement is a material inducement to the

Company to enter into this Agreement and the Confidentiality Agreement is hereby re-affirmed and incorporated herein in its entirety. The existence and contents of this Agreement shall constitute Confidential Information (as defined in the Confidentiality Agreement).

6. **Violation of Restrictive Covenants**. The Optionee agrees that if the Optionee violates, breaches or contests the enforceability of any confidentiality, non-competition, non-solicitation, no-hire or other restrictive covenant in favor of a Related Company, the Optionee shall automatically forfeit:

**(a)** any and all of the Common Units subject to this Option (including any Common Units that had previously vested under any other provision of this Agreement), including any Common Units issued upon exercise of this Option;

**(b)** the profit the Optionee has realized from the exercise of the Options, which is the difference between (1) the exercise price of such Options and (2) the Fair Market Value of the Common Units acquired upon exercising such Options (which difference the Optionee will be required to repay to the Company within thirty (30) days of notice that the Company has exercised its rights under this Section); and

**(c)** any and all rights to receive any remaining payments or distributions due to the Optionee from the repurchase of any Common Units then held by the Optionee.

7. **Repurchase Rights upon Termination of Employment**. This Option and the securities issuable upon exercise of this Option are subject to repurchase as set forth in the Plan and the LLC Agreement.

8. **Miscellaneous**.

**(a)** This Agreement shall be subject in all respects to the terms of the Plan, and the Optionee and the Optionee's transferees shall be bound by the terms of the Plan as if incorporated into this Agreement in their entirety. In the event of a conflict between the terms of this Agreement and the Plan, the terms of the Plan shall govern. This Agreement, the LLC Agreement and the Plan constitute the final and entire agreement with respect to the matters contemplated hereby and replace and supersede all other agreements and understandings relating hereto.

**(b)** This Agreement shall be interpreted in such a manner as to be effective and valid under applicable law, but if any provision hereof shall be prohibited or invalid under any such law, such provision shall be ineffective to the extent of such prohibition or invalidity, without invalidating or nullifying the remainder of such provision or any other provisions of this Agreement. The captions of the sections of this Agreement are for convenience of reference only and in no way define, limit or affect the scope or substance of any section of this Agreement.

**(c)** Except as provided herein or in the Plan, this Agreement may not be amended or modified except in a writing signed by the Company and the Optionee. No waiver of this Agreement or any provision hereof shall be binding upon the party against whom enforcement of such waiver is sought unless it is made in writing and signed by or on behalf of

such party.  The waiver by either party of a breach of any provision of this Agreement by the other party shall not operate and be construed as a waiver or a continuing waiver by that party of the same or any subsequent breach of any provision of this Agreement by the other party.  No delay or omission by any party in exercising any right under this Agreement shall operate as a waiver of that or any other right.

**(d)** All notices under this Agreement shall be sent by certified mail, return receipt requested, or by recognized overnight delivery service, or delivered by hand (i) if to the Company, c/o Sunstone Partners Management, L.L.C., 400 S. El Camino Real, Suite 300, San Mateo, CA 94402, Attn: Michael Biggee, with a copy, which shall not constitute notice, to Choate, Hall & Stewart LLP, Two International Place, Boston, MA 02110, Attn: T.J. Murphy, or (ii) if to the Optionee, at the Optionee's address set forth below or at such other address as may be designated in writing by either of the parties to one another in accordance with this Section.

**(e)** This Agreement shall be governed by and construed in accordance with the laws of the State of Delaware, without regard to its conflicts of laws principles.

**(f)** **THE OPTIONEE WAIVES ANY RIGHT TO A TRIAL BY JURY IN THE EVENT OF ANY LEGAL PROCEEDING ARISING OUT OF OR RELATING TO THIS AGREEMENT.**

**(g)** This Agreement may be executed in counterparts, including counterpart signature pages and counterparts by facsimile, each of which taken together shall be deemed an original, but all of which shall constitute one and the same instrument.

**(h)** Subject to the restrictions contained herein and in the Plan, this Agreement shall be binding upon, and inure to the benefit of, the Company and the Optionee and their respective heirs, estate, legal representatives, successors and assigns.

*[Remainder of this Page Intentionally Left Blank]*

IN WITNESS WHEREOF, this Option has been executed as of the date first set forth above.

AVERTIUM HOLDINGS, LLC

By_____
   Name:
   Title:

The undersigned Optionee hereby accepts this Option and agrees to the terms and conditions thereof and of the Plan, and acknowledges receipt of a copy of the Plan.

●          Steven Marandola
Name: Steven Marandola

ADDRESS:

16 Rodman Street

Unit D

Narragansett RI, 02882