UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| STEVEN MARANDOLA, )<br>)<br>    Plaintiff )<br>)<br>v. )<br>)<br>AVERTIUM HOLDINGS, LLC, )<br>AVERTIUM, LLC, and )<br>AVERTIUM TENNESSEE, INC. )<br>)<br>    Defendants. ) | Civil Action File No. 3:25-cv-84 |

## FIRST AMENDED COMPLAINT

Plaintiff, Steven Marandola, by and through his counsel, files this First Amended Complaint against Defendants, and alleges as follows:

### JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction pursuant to 28 U.S.C. section 1332(a) as the matter in controversy exceeds $75,000, exclusive of interest and costs, and there is complete diversity of citizenship between the parties.

2. Venue is proper in this judicial district under 28 U.S.C. section 1391(b)(1) and (b)(2) because Defendants conduct business in this district, and a substantial part of the events or omissions giving rise to the claims occurred in this district.

### THE PARTIES

3. Plaintiff Steven Marandola ("Mr. Marandola") is an individual residing at 16 Rodman Street, Narragansett, Rhode Island.

1

4. Defendant Avertium Holdings, LLC is a Delaware limited liability company. Avertium Holdings, LLC is the ultimate parent of Avertium, LLC and Avertium Tennessee, Inc. Upon information and belief, the members and sub-members of Avertium Holdings, LLC are citizens of states other than Rhode Island.

5. Defendant Avertium, LLC is a Delaware limited liability company, with locations in Phoenix, Arizona, and Knoxville, Tennessee. Upon information and belief, the members of Avertium, LLC are citizens of states other than Rhode Island.

6. Defendant Avertium Tennessee, Inc.. is a Delaware corporation cybersecurity company, with locations in Knoxville, Tennessee. Avertium Tennessee, Inc.'s principle place of business is Tennessee and, upon information and belief, Avertium Tennessee, Inc. does not maintain a principal place of business in Rhode Island.

7. The Defendants, collectively referred to as Avertium, with locations in Phoenix, Arizona, and Knoxville, Tennessee operate as a cybersecurity company.

**INTRODUCTION**

8. Avertium is a cybersecurity company that began in 2019, located primarily in Tennessee and Arizona. Avertium holds itself out as helping its clients to manage security services and also provides consulting services in the area of cybersecurity. It is owned, at least partially, by a private equity firm, Sunstone Partners.

9. This is an action for breach of contract, declaratory relief, and specific performance, arising from Avertium's wrongful cancellation of Mr. Marandola's vested stock options and failure to honor an agreed-upon extension for their exercise. Mr. Marandola, a former employee of Avertium, fully performed under his employment arrangement and option agreement, yet Avertium unilaterally deprived Mr. Marandola of valuable, earned compensation.

2

10. In addition, Avertium seeks to enforce an unreasonable and overly restrictive noncompetition agreement, which is unenforceable under Tennessee law. Mr. Marandola seeks declaratory relief to invalidate this provision and ensure the protection of his rights.

11. Mr. Marandola brings this action to recover damages for Avertium's breach of contract and to compel Avertium to reinstate Mr. Marandola's vested stock options, honor the promised unlimited extension for their exercise, and obtain a declaration that the noncompetition agreement is unenforceable.

## FACTUAL BACKGROUND

### Mr. Marandola's Employment with Avertium

12. Mr. Marandola became employed by Avertium on or about October 3, 2019, in the role of Senior Vice President of Service Delivery. Mr. Marandola's job duties initially included running Avertium's professional services group, and later, managed services. Both were client-facing positions. In his role, Mr. Marandola led teams of Avertium employees in Arizona and Tennessee and interacted with Avertium customers in the United States.

13. When Mr. Marandola entered into his employment with Avertium, the parties entered into a Nondisclosure, Inventions and Noncompetition Agreement (the "Noncompetition Agreement"), which purported to restrict Mr. Marandola's ability to engage in certain competitive activities for a specified period.

14. The Noncompetition Agreement states, in relevant part,

> **Noncompetition.** While I am employed by the Company and for one year after my employment terminates for any reason, I shall not, directly or indirectly, individually or as a stockholder, partner, member, lender, investor, manager, director, officer, employee, consultant, representative, advisor or other owner or participant in any entity, other than the Company, engage in or assist any other person or entity to engage in any business which competes with any

business in which the Company is engaging or in which the Company plans to engage, during or at the time of termination of my employment, in the United States or anywhere else in the world where the Company does business.

A copy of the Noncompetition Agreement is attached hereto as Exhibit 1.

15. Section 12 of the Noncompetition Agreement provides that:

The parties irrevocably and unconditionally (a) submit to the exclusive jurisdiction of the state and federal courts located within the State of Tennessee (the "Courts") for the purpose of any suit, action or other proceeding arising under or relating to this Agreement, (b) agree not to commence any suit, action or other proceeding arising under or relating to this Agreement except in the Courts, and (c) waive, and agree not to assert, by way of motion, as a defense, counterclaim or otherwise, in any such suit, action or proceeding, any claim that such party is not subject personally to the jurisdiction of the Courts, that its property is exempt or immune from attachment or execution, that the suit, action or proceeding is brought in an inconvenient forum, that the venue of the suit, action or proceeding is improper or that this Agreement or the subject matter hereof may not be enforced in or by the Courts.

16. Noncompetition agreements are disfavored in Tennessee because they are restraints on trade, and as such, they are strictly construed in favor of the employee.

17. The relevant factors for determining whether a noncompetition agreement is reasonable include: (1) the consideration supporting the agreement; (2) the threatened danger to the employer in the absence of such an agreement; (3) the economic hardship imposed on the employee by such a covenant, and (4) whether such a covenant should be inimical to public interest. *Hasty v. Rent-A-Driver, Inc.*, 671 S.W.2d 471 (Tenn. 1984).

18. As written, Mr. Marandola's Noncompetition Agreement is overbroad in its scope and reach and is therefore unlawful, void and unenforceable under Tennessee law.

19. On October 3, 2019, pursuant to Avertium's 2018 Equity Incentive Plan, the company granted Mr. Marandola an option to acquire Common Units of Avertium (the "Common Units"), subject to certain terms and conditions. The Common Units were divided into two distinct groups, *Time-Vesting Options* and *Performance-Vesting Options*, with each group having its own vesting provisions.

20. The terms of the options were memorialized in the Option Agreement (the "Option Agreement") provided to Mr. Marandola, a copy of which is attached hereto as <u>Exhibit 2</u>.

21. Pursuant to the terms of the Option Agreement, twenty-five percent (25%) of the Time-Vesting Options vested on the first anniversary of the date of the Option Agreement, and the balance of the Time-Vesting Options vested in equal monthly increments over the subsequent thirty-six (36) months, in each case so long as Mr. Marandola had a business relationship with Avertium through the applicable date.

22. According to the terms of the Option Agreement, if Mr. Marandola left Avertium's employ, he would have 90 days to exercise any options that had fully vested. Any unvested options would be forfeited upon Mr. Marandola's separation from the company.

23. The Option Agreement also purported to incorporate the Noncompetition Agreement in full and stated that if Mr. Mandola were to violate it, his options, including vested options, would be subject to cancellation or claw-back by Avertium.

24. Mr. Marandola worked for Avertium for approximately two and a half (2 ½) years and during that time, earned fully vested options to purchase 163,803 of Avertium's Common Units.

25. In or around November 2022, Mr. Marandola's direct manager, Chief Executive Officer Bill Schmidt, was terminated and a new Chief Executive Officer was hired, Bill Carroll. Once that occurred, Mr. Caroll unilaterally diminished and changed Mr. Marandola's responsibilities removing him from oversight of managed services. From that point forward, Mr. Marandola instead managed Avertium's professional services operations.

26. On March 10, 2023, Mr. Marandola was abruptly terminated by Avertium. That termination was part of a reduction-in-force by Avertium, having nothing to do with his performance or conduct.

27. As part of the layoff, Mr. Marandola received severance pay from Avertium through April 15, 2023. The termination letter from the company to Mr. Marandola, dated March 10, 2023, is attached hereto as Exhibit 3.

28. As of the date of his termination by Avertium, Mr. Marandola had until June 8, 2023 to exercise his vested Avertium options.

29. However, on May 27, 2023, Mr. Marandola was told by William (Bill) Carroll, Chief Executive Officer of the Company ("Mr. Carroll"), that the Company would allow Mr. Marandola to retain the vested units without exercising them in recognition of his outstanding service to the company.

30. This agreement was memorialized in writing on June 2, 2023, by Sherry Day, Compensation and Benefits Manager for the Company, who confirmed Mr. Marandola's conversation with Mr. Carroll in writing, stating "Bill shared with me what he said to you last Saturday. The message was:

> "We appreciate the value you created at Avertium since inception. Given this, of the time-based units you had vested into as of your last day of employment, we will let you retain those units without exercising them (none of the performance-based units will vest). You'll still be bound by the terms of the Agreement and Plan, except we will not require you exercise the vested units in order to retain them."

31. Ms. Day further stated, "I have added this to your file, so we have it for the future. I believe, for now, we should be good. If you have any other questions, just let me know."

32. Ms. Day's email contained her signature block and copied both Mr. Carroll, Avertium's Chief Executive Officer and Vicente Velez, Avertium's Chief Financial Officer.

33. In reliance on the Chief Executive Officer's assurance, as confirmed by the Company's Compensation and Benefits Manager in a writing that copied Avertium's CEO and CFO, Mr. Marandola did not execute his fully vested 163,803 options prior to June 8, 2023.

**Mr. Marandola's Work for Quorum**

34. In April or May 2023, Mr. Marandola agreed to perform contract work for a UK cybersecurity company located in Edinburgh, Scotland, named Quorum Cyber ("Quorum"). Quorum was founded in Edinburgh, Scotland in 2016.

35. Quorum operated primarily in Europe, with only a small presence in North America prior to then. It was not until late 2024 and early 2025, when Quorum acquired two cybersecurity firms one in Canada and one in the United States that Quorum's presence in North American markets became significant. Marandola played no role in identifying or acquiring those companies during the period of his Non-Competition Agreement with Avertium.

36. Mr. Marandola's contract work for Quorum was not a breach of his Noncompetition Agreement with Avertium.

37. Specifically, during the term of Mr. Marandola's Noncompetion Agreement with Avertium, March 10, 2023 through March 9, 2024 (the "Noncompetition Period"), neither Mr, Marandola nor Quorum competed with any business in which Avertium was engaged, or in which it planned to engage.

38. The work that Mr. Marandola was asked to perform for Quorum in 2023 was initially to help Quorum raise operating funds.

39. In or about August 2023, Mr. Marandola became a full-time employee with Quorum with the title "Vice President of Innovations." In this role, his job duties are entirely unlike his work for Avertium. Specifically, Mr. Marandola was tasked with assisting Quorum

with building out its internal infrastructure. He holds no outwardly facing sales or management positions as he had with Avertium.

40. At no point did Avertium have a protectable interest in preventing Mr. Marandola from working for Quorum. To this day, Mr. Marandola is not, and was not, responsible for managed or consulting services at Quorum, and he has no client-facing responsibilities.

41. Mr. Marandola did not, and does not, rely on any confidential information from Avertium to perform his job functions at Quorum.

42. Further, throughout the alleged Noncompetition Period, Avertium and Quorum operated in different markets, in different countries. Avertium operated in the United States, and Quorum's clients were located primarily in the United Kingdom and European Union.

43. The Tennessee Supreme Court has held that, "noncompetition covenants, which embrace territory in which the employee never performed services for his employer, are unreasonable and unenforceable." *AllRight Auto Parks Inc. v. Berry*, 219 Tenn. 280, 287 (Tenn. 1966), 409 S.W.2d 361.

44. Mr. Marandola was not hired to compete with Avertium and has not competed with Avertium in any way. His position and job duties at Quorum have been, and continue to be, entirely different from his position and job duties at Avertium.

45. In any case, under Tennessee law, Avertium cannot enforce a noncompetition agreement that prevents a former employee from engaging in ordinary competition. Only "unfair competition" may be restrained by a noncompetition agreement. *Ivy v. Tenn. Dep of Correction*, No. M2005-00936-COA-R3-CV, 10 (Tenn. Ct. App. Apr. 27, 2007); *Hasty v. Rent-A-Driver, Inc.*, 671 S.W.2d 471 (Tenn. 1984).

**Avertium Unilaterally Cancels Mr. Marandola's Options Without Warning**

46. In a letter dated November 6, 2023, (the "Avertium Letter"), Avertium notified Mr. Marandola that it recently learned that he had accepted employment with Quorum. That letter further stated that Avertium cancelled Mr. Marandola's stock options because Quorum was a "competitor" of Avertium. The Avertium Letter further stated that Mr. Marandola's options were also cancelled because he did not exercise them within a reasonable time, (ignoring Avertium's written waiver of that term). A copy of the Avertium Letter is attached hereto as <u>Exhibit 4</u>.

47. Despite Mr. Marandola's compliance with both the terms of his option exercise (as modified by Avertium in writing) and the Noncompetition Agreement, Avertium failed to honor its obligations under the Option Agreement by wrongfully canceling Mr. Marandola's vested options. Avertium's unilateral "surprise" termination of Mr. Marandola's options eliminated any possibility of his exercising his then fully vested options.

48. Avertium's wrongful termination of Mr. Marandola's vested options constitutes a material breach of the Option Agreement.

49. Avertium's accusation that Mr. Marandola violated the Noncompetition Agreement is without factual or legal basis.

50. Mr. Marandola has not engaged in any activities that would constitute a violation of the Noncompetition Agreement.

51. As a result of Avertium's bad faith acts, Mr. Marandola has suffered significant harm, including the complete loss of his vested equity, and other damages as detailed below.

52. Mr. Marandola now brings this suit for breach of contract to enforce the terms of the Option Agreement between the parties. Additionally, Mr. Marandola brings a claim for declaratory judgment that he has not violated the Noncompetition Agreement, and for an order

compelling Avertium to reinstate his stock options in accordance with the terms of the Option Agreement, and allow Mr. Marandola to exercise them within the timeframe as extended by Avertium.

**FIRST CAUSE OF ACTION**
**Breach of Contract**
**(Option Agreement)**

53. Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 48 as though fully set forth herein.

54. Mr. Marandola and Avertium entered into an employment arrangement in or about October 2019. During the entirety of his employment, Mr. Marandola performed his duties pursuant to his employment arrangement.

55. In affiliation with this employment, Avertium provided Mr. Marandola an agreement for stock options which was memorialized in the Options Agreement.

56. Mr. Marandola was employed by Avertium for approximately two and a half (2 ½) years. Pursuant to the terms of the Options Agreement, 163,803 options had fully vested as of the date he was laid off by Avertium.

57. The Option Agreement constitutes a valid and enforceable contract between Mr. Marandola and Avertium.

58. Mr. Marandola fully performed all obligations under the Option Agreement.

59. Avertium materially breached the Option Agreement by wrongfully cancelling Mr. Marandola's already vested options and refusing to honor his rights under the Options Agreement.

60. As a direct and proximate result of Avertium's breach, Mr. Marandola has suffered damages in an amount to be determined at trial.

# SECOND CAUSE OF ACTION
## Declaratory Judgment
## (Noncompetition Agreement)

61. Mr. Marandola incorporates by reference the allegations contained in paragraphs 1 through 48 as though fully set forth herein.

62. An actual and justiciable controversy exists between Mr. Marandola and Avertium regarding the scope, validity, interpretation, and application of the Noncompetition Agreement.

63. Mr. Marandola has suffered injury as a result of Avertium's cancellation of his option, based on its assertions that Mr. Marandola is bound by the Noncompetition Agreement which prohibits his lawful employment by Quorum.

64. The Noncompetition Agreement constitutes an unlawful restraint of trade under Tennessee law, because it does not act to protect any legitimate business interests of Avertium.

Specifically,

   a. There is no confidential information at issue that constitutes a legitimate business interest;

   b. There are no substantial, protectable customers or other relationships at issue;

   c. Mr. Marandola did not receive any specialized or extraordinary training from Avertium for use in his position with Quorum;

   d. Mr. Marandola has not performed services for Quorum in any territory in which Avertium was engaged; and

   e. Avertium has no legitimate business interests that could justify enforcement of the Noncompetition Agreement's restrictions against Mr. Marandola.

65. Prior to unilaterally cancelling Mr. Marandola's options, Avertium conducted no inquiry or due diligence to determine whether Mr. Marandola had in fact breached the Noncompetition Agreement.

66. Further, in not exercising his options within the 90-day period specified under the Option Agreement, Mr. Marandola in good faith and justifiably relied on the written waiver of that term by Avertium.

67. Mr. Marandola seeks a declaratory judgment under 28 U.S.C. section 2201 that the Noncompetition Agreement is void, unlawful, and unenforceable as written, or in the alternative, that Mr. Marandola has not violated the Noncompetition Agreement.

68. Mr. Marandola further seeks a declaration that Avertium waived the 90-day exercise term contained in the Option Agreement, or a declaration that Avertium is estopped from claiming that the 90-day exercise period applies to Mr. Marandola's exercise of his options.

69. Such a declaration is necessary to resolve the controversy and to protect Mr. Marandola's rights and interests.

## THIRD CAUSE OF ACTION
### Specific Performance

70. Mr. Marandola incorporates by reference the allegations contained in paragraphs 1 through 48 as through fully set forth herein.

71. Mr. Marandola has a contractual right to 163,803 fully vested stock options, which Avertium unlawfully revoked.

72. Mr. Marandola has no adequate remedy at law for the loss of the stock options wrongfully cancelled by Avertium.

73. Mr. Marandola is entitled to an order compelling Avertium to reinstate his stock options in accordance with the terms of the Option Agreement and allow Mr. Marandola to exercise them in the timeframe as extended by Avertium.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Mr. Marandola respectfully requests that the Court enter judgment in his favor and award the following relief:

a. An award of damages in an amount to be determined at trial, said amount being not more than $12,000,000;

b. A declaratory judgment that the Noncompetition Agreement is unlawful, void, and unenforceable, or alternatively, that Mr. Marandola has not violated the Noncompetition Agreement;

c. An order compelling Avertium to reinstate Mr. Marandola's 163,803 vested stock options in accordance with the terms of the Option Agreement, and to allow Mr. Marandola the promised unlimited extension of time for their exercise;

d. All reasonable attorneys' fees, costs and other expenses, as allowed by law;

e. Pre-judgment and post-judgement interest as allowed by law; and

f. Such other and further legal or equitable relief as to the Court deems just and proper.

Respectfully submitted this 29th day of April, 2025.

By His Attorneys:

s/ D. Scott Hurley
D. Scott Hurley, Esq. #011001
Ryan N. Shamblin, Esq. #022280
Attorneys for the Plaintiff
The Hurley Law Firm, P.C.
205 Mohican St.
Knoxville, Tennessee 37919
865-523-1414
865-546-8121 (fax)

*Counsel to Plaintiff*

John A. Sten, Esq.
Ann Makkiya, Esq.
Byrd Campbell, P.A.
100 State Street, 3rd Fl.
Boston MA 02109
(617) 967-2820
JSten@ByrdCampbell.com
AMakkiya@ByrdCampbell.com
MCarito@ByrdCampbell.com

CERTIFICATE OF SERVICE

I hereby certify that on the 29th day of April 2025, the foregoing document was served via the Court's CM/ECF filing system and/or by email upon:

| | |
|---|---|
| Benjamin Morrell, Esq. | Lyndsey M. Kruzer, Esq. |
| Taft Stettinius & Hollister LLP | Choate, Hall & Stewart LLP |
| 111 E. Wacker Dr., Ste 2600 | Two International Place |
| Chicago, IL 60601 | Boston, MA 02110 |
| 312-840-4489 | 617-248-4790 |
| Email: bmorrell@taftlaw.com | Email: lkruzer@choate.com |

/s/ D. Scott Hurley
D. Scott Hurley, Esquire