# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TENNESSEE
## NORTHERN DIVISION

| | |
|---|---|
| STEVEN MARANDOLA, | |
| Plaintiff, | |
| v. | Case No. 3:25-cv-00084-KAC-DCP |
| AVERTIUM HOLDINGS, LLC, AVERTIUM, LLC, and AVERTIUM TENNESSEE, INC., | District Judge Crytzer |
| | Magistrate Judge Poplin |
| Defendants. | |

## AMENDED ANSWER TO FIRST AMENDED COMPLAINT
## AND AMENDED COUNTERCLAIM

Defendants Avertium Holdings, LLC, Avertium, LLC, and Avertium Tennessee, Inc., by and through their undersigned counsel, answer Plaintiff's amended complaint as follows. Any allegations contained in the complaint not specifically admitted herein are expressly denied.[1]

## JURISDICTION AND VENUE

1.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. section 1332(a) as the matter in controversy exceeds $75,000, exclusive of interest and costs, and there is complete diversity of citizenship between the parties.

**Answer:** Defendants admit that the Court has subject matter jurisdiction over this case.

2.      Venue is proper in this judicial district under 28 U.S.C. section 1391(b)(1) and (b)(2) because Defendants conduct business in this district, and a substantial part of the events or omissions giving rise to the claims occurred in this district.

**Answer:** Defendants admit that venue is proper in this district and division. Defendants deny any remaining allegations of Paragraph 2.

---

[1] The complaint's argumentative subheadings are not reproduced herein. To the extent any response to the allegations contained in them is required, Defendants deny them.

## THE PARTIES

3.      Plaintiff Steven Marandola ("Mr. Marandola") is an individual residing at 16 Rodman Street, Narragansett, Rhode Island.

**Answer:** Defendants lack knowledge or information sufficient to form a belief about the

truth of the allegations of Paragraph 3, and therefore deny them.

4.      Defendant Avertium Holdings, LLC is a Delaware limited liability company. Avertium Holdings, LLC is the ultimate parent of Avertium, LLC and Avertium Tennessee, Inc. Upon information and belief, the members and sub-members of Avertium Holdings, LLC are citizens of states other than Rhode Island.

**Answer:** Defendants deny that Avertium Holdings, LLC is the ultimate parent of Avertium,

LLC and Avertium Tennessee, Inc. and otherwise admit the remaining allegations of paragraph 4.

5.      Defendant Avertium, LLC is a Delaware limited liability company, with locations in Phoenix, Arizona, and Knoxville, Tennessee. Upon information and belief, the members of Avertium, LLC are citizens of states other than Rhode Island.

**Answer:** Defendants admit the allegations of paragraph 5.

6.      Defendant Avertium Tennessee, Inc. is a Delaware corporation cybersecurity company, with locations in Knoxville, Tennessee. Avertium Tennessee, Inc.'s principle [sic] place of business is Tennessee, and upon information and belief, Avertium Tennessee, Inc. does not maintain a principal place of business in Rhode Island.

**Answer:** Defendants admit the allegations of paragraph 6.

7.      The Defendants, collectively referred to as Avertium, with locations in Phoenix, Arizona, and Knoxville, Tennessee operate as a cybersecurity company.

**Answer:** Defendants admit that Plaintiff refers to them collectively as "Avertium" in the

complaint, and that Defendants operate a cybersecurity business in, among other locations, Phoe-

nix, Arizona and Knoxville, Tennessee. Defendants deny any remaining allegations of Paragraph

7.

## INTRODUCTION

8.    Avertium is a cybersecurity company that began in 2019, located primarily in Tennessee and Arizona. Avertium holds itself out as helping its clients to manage security services and also provides consulting services in the area of cybersecurity. It is owned, at least partially, by a private equity firm, Sunstone Partners.

**Answer:** Defendants admit that Avertium Holdings, LLC was formed in 2019 when it bought existing companies. Defendants otherwise admit the allegations of paragraph 8.

9.    This is an action for breach of contract, declaratory relief, and specific performance, arising from Avertium's wrongful cancellation of Mr. Marandola's vested stock options and failure to honor an agreed-upon extension for their exercise. Mr. Marandola, a former employee of Avertium, fully performed under his employment arrangement and option agreement, yet Avertium unilaterally deprived Mr. Marandola of valuable, earned compensation.

**Answer:** Defendants admit that Plaintiff asserts claims for breach of contract, declaratory relief, and specific performance in this lawsuit, and that Plaintiff is a former employee of Avertium LLC. Defendants deny any remaining allegations of Paragraph 9.

10.    In addition, Avertium seeks to enforce an unreasonable and overly restrictive non-competition agreement, which is unenforceable under Tennessee law. Mr. Marandola seeks declaratory relief to invalidate this provision and ensure the protection of his rights.

**Answer:** Defendants admit that Plaintiff seeks declaratory relief and wishes to invalidate a restrictive covenant contained in a contract between the parties. Defendants deny any remaining allegations of Paragraph 10.

11.    Mr. Marandola brings this action to recover damages for Avertium's breach of contract and to compel Avertium to reinstate Mr. Marandola's vested stock options, honor the promised unlimited extension for their exercise, and obtain a declaration that the noncompetition agreement is unenforceable.

**Answer:** Defendants admit that Plaintiff brought this action to recover for purported breach of contract, seeking declaratory relief and specific performance. Defendants deny any remaining allegations of Paragraph 11.

## FACTUAL BACKGROUND

12.     Mr. Marandola became employed by Avertium on or about October 3, 2019, in the role of Senior Vice President of Service Delivery. Mr. Marandola's job duties initially included running Avertium's professional services group, and later, managed services. Both were client-facing positions. In his role, Mr. Marandola led teams of Avertium employees in Arizona and Tennessee and interacted with Avertium customers in the United States.

**Answer:** Defendants admit allegations of paragraph 12.

13.     When Mr. Marandola entered into his employment with Avertium, the parties entered into a Nondisclosure, Inventions and Noncompetition Agreement (the "Noncompetition Agreement"), which purported to restrict Mr. Marandola's ability to engage in certain competitive activities for a specified period.

**Answer:** Defendants admit the allegations of paragraph 13.

14.     The Noncompetition Agreement states, in relevant part,

**Noncompetition**. While I am employed by the Company and for one year after my employment terminates for any reason, I shall not, directly or indirectly, individually or as a stockholder, partner, member, lender, investor, manager, director, officer, employee, consultant, representative, advisor or other owner or participant in any entity, other than the Company, engage in or assist any other person or entity to engage in any business which competes with any business in which the Company is engaging or in which the Company plans to engage, during or at the time of termination of my employment, in the United States or anywhere else in the world where the Company does business.

A copy of the Noncompetition Agreement is attached hereto as Exhibit 1.

**Answer:** The content of the Noncompetition Agreement speaks for itself. Defendants deny

all allegations inconsistent therewith.

15.     Section 12 of the Noncompetition Agreement provides that:

The parties irrevocably and unconditionally (a) submit to the exclusive jurisdiction of the state and federal courts located within the State of Tennessee (the "Courts") for the purpose of any suit, action or other proceeding arising under or relating to this Agreement, (b) agree not to commence any suit, action or other proceeding arising under or relating to this Agreement except in the Courts, and (c) waive, and agree not to assert, by way of motion, as a defense, counterclaim or otherwise, in any such suit, action or proceeding, any claim that such party is not subject personally to the jurisdiction of the Courts, that its property is

exempt or immune from attachment or execution, that the suit, action or proceeding is brought in an inconvenient forum, that the venue of the suit, action or proceeding is improper or that this Agreement or the subject matter hereof may not be enforced in or by the Courts.

**Answer:** The content of the Noncompetition Agreement speaks for itself. Defendants deny all allegations inconsistent therewith.

16.     Noncompetition agreements are disfavored in Tennessee because they are restraints on trade, and as such, they are strictly construed in favor of the employee.

**Answer:** Paragraph 15 consists of a legal conclusion to which no response is required. To the extent an answer is required, Defendants deny all allegations of paragraph 16.

17.     The relevant factors for determining whether a noncompetition agreement is reasonable include: (1) the consideration supporting the agreement; (2) the threatened danger to the employer in the absence of such an agreement; (3) the economic hardship imposed on the employee by such a covenant, and (4) whether such a covenant should be inimical to public interest. *Hasty v. Rent-A-Driver, Inc.*, 671 S.W.2d 471 (Tenn. 1984).

**Answer:** Paragraph 16 consists of a legal conclusion to which no response is required. To the extent an answer is required, Defendants deny all allegations of paragraph 17.

18.     As written, Mr. Marandola's Noncompetition Agreement is overbroad in its scope and reach and is therefore unlawful, void and unenforceable under Tennessee law.

**Answer:** Defendants deny the allegations of paragraph 18.

19.     On October 3, 2019, pursuant to Avertium's 2018 Equity Incentive Plan, the company granted Mr. Marandola an option to acquire Common Units of Avertium (the "Common Units"), subject to certain terms and conditions. The Common Units were divided into two distinct groups, *Time-Vesting Options and Performance-Vesting Options*, with each group having its own vesting provisions.

**Answer:** Defendants admit that the option was granted by Avertium Holdings, LLC and represented an option, subject to the terms of the Option Agreement, the Plan, and the limited liability company agreement of Avertium Holdings, LLC, to acquire Common Units of Avertium

Holdings, LLC. For the parties' convenience, Defendants are willing to permit the options to be referred to as options to acquire Common Units of the Company.

20. The terms of the options were memorialized in the Option Agreement (the "Option Agreement") provided to Mr. Marandola, a copy of which is attached hereto as Exhibit 2.

**Answer:** Defendants note that terms applicable to the option also appear in the Plan and in the limited liability company agreement of Avertium Holdings, LLC. Subject to such clarifications, Defendants admit the allegations of paragraph 20.

21. Pursuant to the terms of the Option Agreement, twenty-five percent (25%) of the Time-Vesting Options vested on the first anniversary of the date of the Option Agreement, and the balance of the Time-Vesting Options vested in equal monthly increments over the subsequent thirty-six (36) months, in each case so long as Mr. Marandola had a business relationship with Avertium through the applicable date.

**Answer:** The content of the Option Agreement speaks for itself. Defendants deny all allegations inconsistent therewith.

22. According to the terms of the Option Agreement, if Mr. Marandola left Avertium's employ, he would have 90 days to exercise any options that had fully vested. Any unvested options would be forfeited upon Mr. Marandola's separation from the company.

**Answer:** The content of the Option Agreement speaks for itself. Defendants deny all allegations inconsistent therewith.

23. The Option Agreement also purported to incorporate the Noncompetition Agreement in full and stated that if Mr. Mandola were to violate it, his options, including vested options, would be subject to cancellation or claw-back by Avertium.

**Answer:** The content of the Option Agreement speaks for itself. Defendants deny all allegations inconsistent therewith.

24. Mr. Marandola worked for Avertium for approximately two and a half (2 1/2) years and during that time, earned fully vested options to purchase 163,803 of Avertium's Common Units.

**Answer:** Defendants admit the allegations of paragraph 24.

25.     In or around November 2022, Mr. Marandola's direct manager, Chief Executive Officer Bill Schmidt, was terminated and a new Chief Executive Officer was hired, Bill Carroll. Once that occurred, Mr. Caroll unilaterally diminished and changed Mr. Marandola's responsibilities removing him from oversight of managed services. From that point forward, Mr. Marandola instead managed Avertium's professional services operations.

**Answer:** Defendants deny the allegations of paragraph 25.

26.     On March 10, 2023, Mr. Marandola was abruptly terminated by Avertium. That termination was part of a reduction-in-force by Avertium, having nothing to do with his performance or conduct.

**Answer:** Defendants admit that Avertium terminated Plaintiff's employment on March 10,

2023. Defendants deny any remaining allegations of paragraph 26.

27.     As part of the layoff, Mr. Marandola received severance pay from Avertium through April 15, 2023. The termination letter from the company to Mr. Marandola, dated March 10, 2023, is attached hereto as Exhibit 3.

**Answer:** Defendants admit the allegations of paragraph 27.

28.     As of the date of his termination by Avertium, Mr. Marandola had until June 8, 2023 to exercise his vested Avertium options.

**Answer:** Defendants admit the allegations of paragraph 28.

29.     However, on May 27, 2023, Mr. Marandola was told by William (Bill) Carroll, Chief Executive Officer of the Company ("Mr. Carroll"), that the Company would allow Mr. Marandola to retain the vested units without exercising them in recognition of his outstanding service to the company.

**Answer:** Defendants admit that on May 27, 2023, Bill Carroll told Plaintiff that he could

retain the vested units without exercising them, but otherwise deny the allegations of paragraph

29.

30.     This agreement was memorialized in writing on June 2, 2023, by Sherry Day, Compensation and Benefits Manager for the Company, who confirmed Mr. Marandola's conversation

with Mr. Carroll in writing, stating "Bill shared with me what he said to you last Saturday. The message was:

> "We appreciate the value you created at Avertium since inception. Given this, of the time-based units you had vested into as of your last day of employment, we will let you retain those units without exercising them (none of the performance-based units will vest). You'll still be bound by the terms of the Agreement and Plan, except we will not require you exercise the vested units in order to retain them."

**Answer:** Defendants deny that any "agreement" existed related to the allegations of paragraph 29, and otherwise admit the remaining allegations of paragraph 30.

31.     Ms. Day further stated, "I have added this to your file, so we have it for the future. I believe, for now, we should be good. If you have any other questions, just let me know."

**Answer:** Defendants admit the allegations of paragraph 31.

32.     Ms. Day's email contained her signature block and copied both Mr. Carroll, Avertium's Chief Executive Officer and Vicente Velez, Avertium's Chief Financial Officer.

**Answer:** Defendants admit the allegations of paragraph 32.

33.     In reliance on the Chief Executive Officer's assurance, as confirmed by the Company's Compensation and Benefits Manager in a writing that copied Avertium's CEO and CFO, Mr. Marandola did not execute his fully vested 163,803 options prior to June 8, 2023.

**Answer:** Defendants admit that Plaintiff did not execute his options prior to June 8, 2023. Defendants lack knowledge or information sufficient to form a belief about Plaintiff's reliance, and deny any remaining allegations of paragraph 33.

34.     In April or May 2023, Mr. Marandola agreed to perform contract work for a UK cybersecurity company located in Edinburgh, Scotland, named Quorum Cyber ("Quorum"). Quorum was founded in Edinburgh, Scotland in 2016.

**Answer:** Defendants admit, based on information and belief, that in 2023, Plaintiff began working at Quorum, a cybersecurity company. Defendants otherwise lack knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 34, and therefore

deny them.

35.     Quorum operated primarily in Europe, with only a small presence in North America prior to then. It was not until late 2024 and early 2025, when Quorum acquired two cybersecurity firms one in Canada and one in the United States that Quorum's presence in North American markets became significant. Marandola played no role in identifying or acquiring those companies during the period of his Non-Competition Agreement with Avertium.

**Answer:** Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 35, and therefore deny them.

36.     Mr. Marandola's contract work for Quorum was not a breach of his Noncompetition Agreement with Avertium.

**Answer:** Defendants deny the allegations of paragraph 36.

37.     Specifically, during the term of Mr. Marandola's [Noncompetition] Agreement with Avertium, March 10, 2023 through March 9, 2024 (the "Noncompetition Period"), neither [Mr.] Marandola nor Quorum competed with any business in which Avertium was engaged, or in which it planned to engage.

**Answer:** Defendants deny the allegations of paragraph 37.

38.     The work that Mr. Marandola was asked to perform for Quorum in 2023 was initially to help Quorum raise operating funds.

**Answer:** Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 38, and therefore deny them.

39.     In or about August 2023, Mr. Marandola became a full-time employee with Quorum with the title "Vice President of Innovations." In this role, his job duties are entirely unlike his work for Avertium. Specifically, Mr. Marandola was tasked with assisting Quorum with building out its internal infrastructure. He holds no outwardly facing sales or management positions as he had with Avertium.

**Answer:** Defendants admit that at some point, Plaintiff became an employee of Quorum and lack knowledge or information to form a belief about Plaintiff's exact positions at Quorum. Defendants otherwise deny any remaining allegations of Paragraph 39.

40.     At no point did Avertium have a protectable interest in preventing Mr. Marandola from working for Quorum. To this day, Mr. Marandola is not, and was not, responsible for managed or consulting services at Quorum, and he has no client-facing responsibilities.

**Answer:** Defendants deny that they lacked or lack a protectable interest in preventing Plaintiff from working for Quorum. Defendants otherwise lack knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 40, and therefore deny them.

41.     Mr. Marandola did not, and does not, rely on any confidential information from Avertium to perform his job functions at Quorum.

**Answer:** Defendants deny the allegations of paragraph 41.

42.     Further, throughout the alleged Noncompetition Period, Avertium and Quorum operated in different markets, in different countries. Avertium operated in the United States, and Quorum's clients were located primarily in the United Kingdom and European Union.

**Answer:** Defendants admit that Avertium operated in the United States during the Noncompetition Period and deny that Quorum did not operate in the United States during the Noncompetition Period. Defendants otherwise lack knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 42, and therefore deny them.

43.     The Tennessee Supreme Court has held that, "noncompetition covenants, which embrace territory in which the employee never performed services for his employer, are unreasonable and unenforceable." *AllRight Auto Parks Inc. v. Berry*, 219 Tenn. 280, 287 (Tenn. 1966), 409 S.W.2d 361.

**Answer:** Defendants admit that the quote appearing in paragraph 43 appears in the *AllRight Auto Parks* case cited therein. Defendants deny any remaining allegations of paragraph 43.

44.     Mr. Marandola was not hired to compete with Avertium and has not competed with Avertium in any way. His position and job duties at Quorum have been, and continue to be, entirely different from his position and job duties at Avertium.

**Answer:** Defendants deny the allegations of paragraph 44.

45. In any case, under Tennessee law, Avertium cannot enforce a noncompetition agreement that prevents a former employee from engaging in ordinary competition. Only "unfair competition" may be restrained by a noncompetition agreement. *Ivy v. Tenn. Dep of Correction*, No. M2005-00936-COA-R3-CV, 10 (Tenn. Ct. App. Apr. 27, 2007); *Hasty v. Rent-A-Driver, Inc.*, 671 S.W.2d 471 (Tenn. 1984).

**Answer:** Paragraph 45 consists of a legal conclusion to which no response is required. To the extent an answer is required, Defendants deny all allegations of paragraph 45.

46. In a letter dated November 6, 2023, (the "Avertium Letter"), Avertium notified Mr. Marandola that it recently learned that he had accepted employment with Quorum. That letter further stated that Avertium cancelled Mr. Marandola's stock options because Quorum was a "competitor" of Avertium. The Avertium Letter further stated that Mr. Marandola's options were also cancelled because he did not exercise them within a reasonable time, (ignoring Avertium's written waiver of that term). A copy of the Avertium Letter is attached hereto as Exhibit 4.

**Answer:** Defendants admit that Avertium Holdings, LLC, on behalf of itself and its subsidiaries, sent the Avertium Letter to Mr. Marandola on November 6, 2023, the content of which speaks for itself. Defendants deny any allegations inconsistent therewith and otherwise deny any remaining allegations of paragraph 46.

47. Despite Mr. Marandola's compliance with both the terms of his option exercise (as modified by Avertium in writing) and the Noncompetition Agreement, Avertium failed to honor its obligations under the Option Agreement by wrongfully canceling Mr. Marandola's vested options. Avertium's unilateral "surprise" termination of Mr. Marandola's options eliminated any possibility of his exercising his then fully vested options.

**Answer:** Defendants admit that Avertium canceled Plaintiff's options and thereafter Plaintiff had no possibility of exercising his options. Defendants deny any remaining allegations of paragraph 47.

48. Avertium's wrongful termination of Mr. Marandola's vested options constitutes a material breach of the Option Agreement.

**Answer:** Defendants deny the allegations of paragraph 48.

49. Avertium's accusation that Mr. Marandola violated the Noncompetition Agreement

is without factual or legal basis.

**Answer:** Defendants deny the allegations of paragraph 49.

50.     Mr. Marandola has not engaged in any activities that would constitute a violation of the Noncompetition Agreement.

**Answer:** Defendants deny the allegations of paragraph 50.

51.     As a result of Avertium's bad faith acts, Mr. Marandola has suffered significant harm, including the complete loss of his vested equity, and other damages as detailed below.

**Answer:** Defendants deny the allegations of paragraph 51.

52.     Mr. Marandola now brings this suit for breach of contract to enforce the terms of the Option Agreement between the parties. Additionally, Mr. Marandola brings a claim for declaratory judgment that he has not violated the Noncompetition Agreement, and for an order compelling Avertium to reinstate his stock options in accordance with the terms of the Option Agreement, and allow Mr. Marandola to exercise them within the timeframe as extended by Avertium.

**Answer:** Defendants admit that Plaintiff brought this action to recover for purported breach of contract, seeking declaratory relief and specific performance. Defendants deny any remaining allegations of Paragraph 52.

## **FIRST CAUSE OF ACTION**
### **Breach of Contract**
### **(Option Agreement)**

53.     Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 48 as though fully set forth herein.

**Answer:** Defendants restate their answers to the allegations set forth in each of the preceding paragraphs.

54.     Mr. Marandola and Avertium entered into an employment arrangement in or about October 2019. During the entirety of his employment, Mr. Marandola performed his duties pursuant to his employment arrangement.

**Answer:** Defendants admit that the parties to the employment agreement entered into that

agreement, as stated in the agreement. Defendants deny any remaining allegations of paragraph 54.

55. In affiliation with this employment, Avertium provided Mr. Marandola an agreement for stock options which was memorialized in the Options Agreement.

**Answer:** Defendants admit that Avertium provided Plaintiff with an option to acquire Common Units, which Plaintiff characterizes as "stock options."

56. Mr. Marandola was employed by Avertium for approximately two and a half (2 1/2) years. Pursuant to the terms of the Options Agreement, 163,803 options had fully vested as of the date he was laid off by Avertium.

**Answer:** Defendants admit the allegations of paragraph 56.

57. The Option Agreement constitutes a valid and enforceable contract between Mr. Marandola and Avertium.

**Answer:** Defendants admit the allegations of paragraph 57.

58. Mr. Marandola fully performed all obligations under the Option Agreement.

**Answer:** Defendants deny the allegations of paragraph 58.

59. Avertium materially breached the Option Agreement by wrongfully cancelling Mr. Marandola's already vested options and refusing to honor his rights under the Options Agreement.

**Answer:** Defendants deny the allegations of paragraph 59.

60. As a direct and proximate result of Avertium's breach, Mr. Marandola has suffered damages in an amount to be determined at trial.

**Answer:** Defendants deny the allegations of paragraph 60.

<u>**SECOND CAUSE OF ACTION**</u>
**Declaratory Judgment**
**(Noncompetition Agreement)**

61. Mr. Marandola incorporates by reference the allegations contained in paragraphs 1

through 48 as though fully set forth herein.

**Answer:** Defendants restate their answers to the allegations set forth in each of the preceding paragraphs.

62.     An actual and justiciable controversy exists between Mr. Marandola and Avertium regarding the scope, validity, interpretation, and application of the Noncompetition Agreement.

**Answer:** Defendants admit the allegations of paragraph 62.

63.     Mr. Marandola has suffered injury as a result of Avertium's cancellation of his option, based on its assertions that Mr. Marandola is bound by the Noncompetition Agreement which prohibits his lawful employment by Quorum.

**Answer:** Defendants deny the allegations of paragraph 63.

64.     The Noncompetition Agreement constitutes an unlawful restraint of trade under Tennessee law, because it does not act to protect any legitimate business interests of Avertium. Specifically,

  a.  There is no confidential information at issue that constitutes a legitimate business interest;

  b.  There are no substantial, protectable customers or other relationships at issue;

  c.  Mr. Marandola did not receive any specialized or extraordinary training from Avertium for use in his position with Quorum;

  d.  Mr. Marandola has not performed services for Quorum in any territory in which Avertium was engaged; and

  e.  Avertium has no legitimate business interests that could justify enforcement of the Noncompetition Agreement's restrictions against Mr. Marandola.

**Answer:** Defendants deny the allegations of paragraph 64 and its subparagraphs.

65.     Prior to unilaterally cancelling Mr. Marandola's options, Avertium conducted no inquiry or due diligence to determine whether Mr. Marandola had in fact breached the Noncompetition Agreement.

**Answer:** Defendants deny the allegations of paragraph 65.

66.     Further, in not exercising his options within the 90-day period specified under the Option Agreement, Mr. Marandola in good faith and justifiably relied on the written waiver of that term by Avertium.

**Answer:** Defendants admit that Plaintiff did not exercise his options within the 90-day period specified under the Option Agreement. Defendants deny any remaining allegations of paragraph 66.

67.     Mr. Marandola seeks a declaratory judgment under 28 U.S.C. section 2201 that the Noncompetition Agreement is void, unlawful, and unenforceable as written, or in the alternative, that Mr. Marandola has not violated the Noncompetition Agreement.

**Answer:** Defendants admit that Plaintiff seeks the declaratory relief described in paragraph 67. Defendants specifically deny that Plaintiff is entitled to any such relief, and deny any remaining allegations of paragraph 67.

68.     Mr. Marandola further seeks a declaration that Avertium waived the 90-day exercise term contained in the Option Agreement, or a declaration that Avertium is estopped from claiming that the 90-day exercise period applies to Mr. Marandola's exercise of his options.

**Answer:** Defendants admit that Plaintiff seeks the declaratory relief described in paragraph 68. Defendants specifically deny that Plaintiff is entitled to any such relief, and deny any remaining allegations of paragraph 68.

69.     Such a declaration is necessary to resolve the controversy and to protect Mr. Marandola's rights and interests.

**Answer:** Defendants deny the allegations of paragraph 69.

### THIRD CAUSE OF ACTION
### Specific Performance

70.     Mr. Marandola incorporates by reference the allegations contained in paragraphs 1 through 48 as through fully set forth herein.

**Answer:** Defendants restate their answers to the allegations set forth in each of the

preceding paragraphs.

71.     Mr. Marandola has a contractual right to 163,803 fully vested stock options, which Avertium unlawfully revoked.

**Answer:** Defendants deny the allegations of paragraph 71.

72.     Mr. Marandola has no adequate remedy at law for the loss of the stock options wrongfully cancelled by Avertium.

**Answer:** Defendants deny the allegations of paragraph 72.

73.     Mr. Marandola is entitled to an order compelling Avertium to reinstate his stock options in accordance with the terms of the Option Agreement and allow Mr. Marandola to exercise them in the timeframe as extended by Avertium.

**Answer:** Defendants deny the allegations of paragraph 73.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Mr. Marandola respectfully requests that the Court enter judgment in his favor and award the following relief:

a.  An award of damages in an amount to be determined at trial, said amount being not more than $12,000,000;

b.  A declaratory judgment that the Noncompetition Agreement is unlawful, void, and unenforceable, or alternatively, that Mr. Marandola has not violated the Noncompetition Agreement;

c.  An order compelling Avertium to reinstate Mr. Marandola's 163,803 vested stock options in accordance with the terms of the Option Agreement, and to allow Mr. Marandola the promised unlimited extension of time for their exercise;

d.  All reasonable attorneys' fees, costs and other expenses, as allowed by law;

e.  Pre-judgment and post-judgement interest as allowed by law; and

f.  Such other and further legal or equitable relief as to the Court deems just and proper.

**Answer:** Defendants admit that Plaintiff requests the relief described in the unnumbered

paragraph under the "PRAYER FOR RELIEF" heading, specifically deny that Plaintiff is entitled

to any such relief, and deny any remaining allegations of this paragraph.

## DEFENSES

Defendants assert the following affirmative defenses:

1.      Plaintiff's complaint fails to state claims upon which relief may be granted.

2.      Plaintiff cannot prove that he incurred damages because he did not exercise the option and therefore did not acquire Common Units, and moreover the Company has not experienced any liquidity transaction that would result in any realization of any value in any Company Options.

3.      Some or all of Plaintiff's claims may be barred by applicable statutes of limitations.

4.      Plaintiff's claims are barred by the doctrines of laches, estoppel, waiver, and unclean hands.

5.      Plaintiff's claims are barred or subject to reduction as Plaintiff failed to mitigate his damages, if any.

6.      Plaintiff's claims are barred by the terms and conditions of any contract he had with Defendants.

## COUNTERCLAIM

Pursuant to Federal Rule of Civil Procedure 13, Defendants/Counter-Plaintiffs Avertium Holdings, LLC, Avertium, LLC and Avertium Tennessee, Inc. plead the following counterclaim for damages against Plaintiff/Counter-Defendant Steven Marandola:

1.      This is an action for damages and injunctive relief arising out of Marandola's breach of the parties' Non-Competition Agreement.

### The Parties

2.      Counter-Plaintiff Avertium Holdings, LLC is a limited liability company organized

under the laws of Delaware. None of its members is a citizen of Rhode Island.

3.  Counter-Plaintiff Avertium, LLC is a limited liability company organized under the laws of Delaware. The sole member of Avertium, LLC is Avertium Holdings, LLC.

4.  Counter-Plaintiff Avertium Tennessee, Inc. is a Delaware corporation with its principal place of business in Knoxville, Tennessee. Avertium Tennessee, Inc. is wholly owned by Avertium Companies, Inc. Avertium Holdings, LLC, Avertium, LLC, and Avertium Tennessee, Inc. are all collectively referred to as "Avertium."

5.  Upon information and belief, Counter-Defendant Marandola is a Rhode Island resident.

**Jurisdiction and Venue**

6.  This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a) as the matter in controversy exceeds $75,000, exclusive of interest and costs, and there is complete diversity of citizenship between the parties. The Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1367, as Counter-Plaintiffs assert a compulsory counterclaim.

7.  Venue is proper in this judicial district under 28 U.S.C. §§ 1391(b)(2) and 1367 because a substantial part of the events or omissions giving rise to the claims occurred in this district and these claims are related to the claims in the action within this court's original jurisdiction.

**Factual Background**

8.  Avertium is a cybersecurity company that helps clients manage security services and provides consulting services in the area of cybersecurity.

9.  Avertium was formed in 2019 after it consolidated other existing companies.

10.  Avertium employed Counter-Defendant Marandola from October 2021 to March

2023 as Senior Vice President of Service Delivery. In this role, his job was to determine what customers wanted. He led Avertium's Managed Services and Professional Services organizations and owned the engineering teams that built and maintained Avertium's Platform, used to deliver services to clients.

11.     As Senior Vice President of Service Delivery, Marandola gained intimate knowledge of the United States cybersecurity markets and Avertium's solutions for assisting the United States cybersecurity industry. Marandola was well-familiar with Avertium's approaches to navigating and providing for the United States cybersecurity market, and certain customers would associate Marandola with Avertium due to his repeated contacts with them.

12.     When Marandola received his offer of employment, he and Avertium executed a Nondisclosure, Inventions and Noncompetition Agreement ("Noncompetition Agreement"), a copy of which is filed on the docket at ECF No. 1-1.

13.     Section 3 of the Noncompetition Agreement states:

> **Noncompetition**. While I am employed by the Company and for one year after my employment terminates for any reason, I shall not, directly or indirectly, individually or as a stockholder, partner, member, lender, investor, manager, director, officer, employee, consultant, representative, advisor or other owner or participant in any entity, other than the Company, engage in or assist any other person or entity to engage in any business which competes with any business in which the Company is engaging or in which the Company plans to engage, during or at the time of termination of my employment, in the United States or anywhere else in the world where the Company does business.

14.     Avertium terminated Marandola's employment on March 10, 2023.

15.     Upon information and belief, in April or May 2023, Marandola began working for a cybersecurity company named Quorum Cyber ("Quorum").

16.     Upon information and belief, Marandola works as Vice President of Innovations at Quorum, using the confidential information and knowledge he gained from maintaining the

Platform at Avertium and interacting with customers, to Quorum's advantage and Avertium's detriment.

17.    Quorum engaged and engages in the cybersecurity business, which is the business that Avertium engaged in at the time Marandola was employed in March 2023. Avertium and Quorum offer the same services.

18.    At Quorum, Marandola would "develop and take to market the company's portfolio of managed and professional services." (*See* **Exhibit A**, attached hereto.[2]) Marandola said he "plan[ned] to empower [Quorum's] sales team with deep insights into [Quorum's] product capabilities and technological advantages, arming them with the knowledge they need to engage *potential clients* effectively." *Id.* (emphasis added).

19.    When Marandola joined Quorum, Quorum's CEO, Federico Charosky, said, "Steven brings a fresh perspective to our mission." (*See* **Exhibit B**, attached hereto.[3])

20.    On or around April 26, 2023, Quorum began its entrance into the North American cybersecurity market. (*See* **Exhibit C**, attached hereto.[4])

21.    From March 2023 to March 2024, at least two other American citizens began working for Quorum from the United States: Jill Neumann, as Microsoft Alliance Manager, and Ricky Simpson, as Solutions Director (and now Head of Solutions Architecture – North America).

22.    Since at least April 2023, Quorum has advertised itself as a "global" or "worldwide"

---

[2] Available at https://www.securitysystemsnews.com/article/quorum-cyber-appoints-steven-marandola-as-vp-of-innovation-rebecca-court-as-marketing-director (last accessed June 5, 2025).

[3] Available at https://itbrief.co.uk/story/quorum-cyber-appoints-steven-marandola-as-vp-of-innovation-and-rebecca-court-as-marketing-director (last accessed June 5, 2025.

[4] Available at https://securitytoday.com/articles/2023/04/25/quorum-cyber-sets-sights-on-north-america.aspx?m=1 (last accessed June 5, 2025).

cybersecurity company.

23.     Upon information and belief, Quorum has benefitted from Marandola's employment by obtaining information from him on United States cybersecurity markets and solutions provided by Avertium to address those markets.

24.     Avertium has a legitimate, protectable business interest in its Platform, its knowledge of United States cybersecurity markets, and its solutions for assisting the United States cybersecurity industry. Avertium also has a protectable business interest in its client base and its investment in Marandola's training, support, and salary.

## COUNT I
## Breach of Contract

25.     Avertium restates and incorporates by reference the allegations contained in the preceding paragraphs of this counterclaim.

26.     In October 2019, Avertium and Marandola executed the Noncompetition Agreement.

27.     The Noncompetition Agreement is a valid and enforceable contract.

28.     Avertium performed its obligations under the Noncompetition Agreement.

29.     Marandola breached the Noncompetition Agreement by going to work for Quorum within one year of his termination from Avertium.

30.     Upon information and belief, Marandola's actions have caused the unlawful diversion of prospective future customer business, profits, and opportunities for Avertium.

31.     Upon information and belief, as a direct and proximate result of Marandola's breach of the Noncompetition Agreement, Avertium has suffered harm, including the loss of business, damaging Avertium in an amount to be determined at trial.

32.     Marandola's breach enhances Quorum's ability to compete more strongly against

Avertium in the future and create more future damages.

## Prayer for Relief

WHEREFORE, Avertium respectfully requests the following relief:

a.    Judgment in favor of Avertium and against Marandola on all counts included in this Counterclaim;

b.    Monetary damages in an amount to be determined at trial in excess of $75,000.00;

c.    Costs of suit, including reasonable attorneys' fees to the extent provided by law and/or the Noncompetition Agreement; and pre- and post-judgment interest at the highest legal rate allowed by law; and

d.    Such other and further relief that the Court may deem appropriate and just under the circumstances.

Date: June 11, 2025                                     Respectfully submitted,

                                                        /s/ *Benjamin S. Morrell*
                                                        Benjamin S. Morrell (TBPR No. 35480)
                                                        TAFT STETTINIUS & HOLLISTER LLP
                                                        111 East Wacker Drive, Suite 2600
                                                        Chicago, IL 60601
                                                        Telephone: (312) 527-4000
                                                        Facsimile: (312) 527-4011
                                                        bmorrell@taftlaw.com

                                                        *Counsel for Defendants/Counter-Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on the date listed below, I filed the foregoing document with the Clerk of the Court using the Court's CM/ECF filing system, which will send notice of such filing to all counsel of record.

Date: June 11, 2025

/s/ *Benjamin S. Morrell*